# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) |
| Plaintiff-Counterdefendant, | ) |
| v. | ) No. 08 C 6446 |
| TRUCK ADS, LLC, | ) Judge Rebecca R. Pallmeyer |
| Defendant-Counterplaintiff. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Nielsen Media Research, Inc., has created a series of maps that divide the United States into geographically-distinct marketing regions, referred to as "designated marketing areas" or "DMAs." In this lawsuit, Plaintiff charges Defendant, Truck Ads, LLC, with violating Nielsen's copyright by reproducing Plaintiff's DMA maps on the Truck Ads website. Defendant Truck Ads has filed a counterclaim, seeking a declaratory judgment that the DMA Data and DMA Regions depicted on the DMA Maps are not copyrightable, and alleging that Plaintiff has engaged in copyright misuse. Plaintiff moves to dismiss the declaratory judgment counterclaim for lack of jurisdiction, and seeks summary judgment on the copyright misuse claim. For the reasons stated herein, both of Plaintiff's motions are granted.

## BACKGROUND

Plaintiff brought this action alleging that Truck Ads "copies, reproduces, and by permitting their reproduction by website users, distributes copies of Nielsen's Copyrighted DMA Maps." (Second Am. Compl. ¶ 11.) Plaintiff alleges that it designed these maps utilizing "a set of proprietary criteria and testing devices, as well as the experience and judgment of its analysts, to partition regions of the United States into geographically-distinct marketing regions, or designated marketing areas (the 'DMA Regions'). . . ." (*Id.* ¶ 6.) According to Nielsen, its DMA Maps are original creations that "graphically depict" Nielsen's proprietary DMA Regions, and "are the product of a creative selection, arrangement and expression of variables and data sets." (*Id.*) The 210

DMA Regions are "marketing regions that Nielsen has determined constitute meaningful marketing areas." (Pl.'s Mem. in Supp. of Mot. to Dismiss [68] at 3.) Nielsen also "produces statistical and demographic data and analyses based on its proprietary testing and research methods for each DMA Region," known as DMA Data. (Compl. ¶ 6.)

Nielsen's complaint charges Truck Ads with reproducing Nielsen's DMA Maps on the Truck Ads web site, and using the maps to define geographic advertising regions that assist Truck Ads and its affiliates in providing mobile advertising services (specifically, advertising on the sides of trucks). (*Id.* ¶ 10.) In fact, so far as the court is aware, it is only on the Truck Ads web site that an internet user can find up-to-date nationwide DMA Maps broken down to the county level.[1] Plaintiff alleges that Defendant's use of the copyrighted DMA Maps violates Nielsen's rights under the Copyright Act, 17 U.S.C. § 101, *et seq.*, and seeks relief including an injunction and damages. (*Id.* at 6.) Defendant denies that it has distributed any of Plaintiff's maps on its website, and contends that, in any event, the DMA Maps at issue are not copyrightable. (Answer ¶¶ 5, 6, 11.)

Defendant has also counterclaimed. Defendant seeks a declaratory judgment that Plaintiff's DMA Regions and DMA Data are not subject to U.S. copyright protection. (Second Am. Countercl. ¶¶ 36, 37, 38.) Defendant also alleges that Plaintiff has misused its copyright because when Plaintiff brought suit, it "knew or should have known" that the DMA Maps, DMA Data, and DMA Regions are not subject to copyright protection. (*Id.* ¶¶ 43, 44, 45, 48, 49.)

Truck Ads' alleged infringement of the Nielsen DMA *Maps* is unquestionably at issue here. Plaintiff has moved to dismiss the counterclaim allegations that the DMA Regions and DMA Data are not subject to copyright protection; Nielsen urges that it is not now claiming that Defendant

---

[1] The availability of these maps on Truck Ads' website has been noted by bloggers and others in online bulletin boards. *See, e.g., John Deeth Blog*, available online at http://jdeeth.blogspot.com/2005/06/red-state-blue-state-tv-view-state.html (visited Jan. 21, 2011) (linking to the Truck Ads website and noting that "[t]his is the Nielsen Designated Market Area (DMA) map. It's really hard to find on the cheap. After a lot of digging I found a site where, after you dig two layers deep, you find maps of each market.").

violated any copyright in DMA Regions or DMA Data, and therefore there is no case or controversy that would support subject matter jurisdiction concerning those allegations. (Pl.'s Mem. in Supp. of Mot. to Dismiss at 10-11.) Plaintiff has also moved for summary judgment on Defendant's counterclaim of copyright misuse. (Pl.'s Mem. in Supp. of Summ. J. [84] at 1.) The court previously dismissed Defendant's counterclaim for copyright misuse because Defendant had not alleged any injury stemming from the alleged misuse aside from the cost of defending this lawsuit. (Hearing Tr. [60] at 3-4.) In its Second Amended Counterclaim, Defendant again counterclaimed for copyright misuse, this time alleging that its negotiations to sell, lease, or license a patent-pending technology fell through as a result of this litigation. (Countercl. ¶¶ 50-56.) Had the deal gone forward, Defendant projects it would have received revenues of $25 million or more over a twenty-year period. (*Id.* ¶ 52.)

I. **Plaintiff's Motion to Dismiss for Lack of Jurisdiction**

In Count I of its counterclaim, Defendant seeks a declaratory judgment that Plaintiff's DMA Regions and DMA Data are not subject to copyright protection. (Countercl. ¶¶ 36-39.) Plaintiff has moved to dismiss this claim. Plaintiff insists it is not asserting that Defendant has violated any copyright in the DMA Regions or DMA Data, and argues that this claim should be dismissed because "there is no case or controversy regarding Nielsen's DMA Regions and DMA Data." (Mot. to Dismiss at 1.)

Because Defendant seeks a declaratory judgment, the court must determine whether a genuine controversy exists. To support the court's involvement, "the controversy must be of sufficient 'immediacy and reality to warrant the issuance of a declaratory judgment,' such that a declaration would not simply amount to 'an opinion advising what the law would be upon a hypothetical state of facts.'" *Geisha, LLC v. Tuccillo*, 525 F.Supp.2d 1002, 1013 (N.D. Ill. 2007) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citations omitted)). In deciding a motion to dismiss for lack of jurisdiction, the court may look beyond the complaint. Thus,

"if the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction, the movant may use affidavits and other material to support the motion. The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorous, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

Plaintiff argues that the only infringement challenged here is Truck Ads' use of the DMA Maps–and therefore there is no case or controversy regarding whether the DMA Regions or DMA Data may be copyrighted. Plaintiff explains that it filed a Second Amended Complaint to make clear that its copyright infringement claim is aimed at Defendant's use of the Nielsen maps. This allegation is, according to Plaintiff, "consistent with Nielsen's understanding that Defendant does not use DMA Regions or DMA Data apart from the publication of Nielsen's copyrighted DMA Maps." (Pl.'s Br. at 7.)

Defendant contends there remains a dispute that supports a declaratory judgment action because Truck Ads "currently uses and displays demographic and ranking data associated with DMA Regions, and plans to continue to display such DMA Regions and DMA Data . . . ." (Response Br. at 8.) Defendant does not directly respond to Plaintiff's assertion that Defendant's use of the DMA Regions and DMA Data is limited to presenting that information in DMA Maps. Instead, Defendant simply notes its CEO's testimony that "[t]he demographic information, which we call DMA data, consists of population broken out by ethnicity, the education level, all of this information is obtained through exactly the same place [Nielsen] obtained it, from the Census Bureau." (Response Br., Ex. 2 at 3.) In another deposition, Truck Ads president explains that the demographic data comes from "[t]he Census Bureau." (Response Br., Ex. 4 at 2.)

To the extent that Defendant challenges any claim to the copyrightability of census data, the court agrees with Plaintiff that there is no justiciable controversy here. Plaintiff does not allege that Defendant is using census data that is somehow copyrighted by Plaintiff (or that is copyrightable at all). Such a claim would be frivolous; census data is pure fact, and it is a bedrock principle of

copyright that facts cannot be copyrighted. "Census takers . . . do not 'create' the population figures that emerge from their efforts; in a sense, they copy these figures from the world around them. . . . Census data therefore do not trigger copyright because these data are not 'original' in the constitutional sense." *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 347 (1991).

Plaintiff's focus in this lawsuit is on the maps, which it contends are original compositions that warrant copyright protection. As recognized in *Rockford Map Publishers, Inc. v. Directory Service Company of Colorado, Inc.*, 768 F.2d 145 (7th Cir. 1985), maps could receive such protection regardless of whether the underlying data are in the public domain or not. "Factual compilations . . . may possess the requisite originality. The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers. These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws." *Feist*, 499 U.S. at 348.

Plaintiff alleges that, like the defendant in *Rockford Map*, Defendant Truck Ads has created its map not by reviewing and analyzing publicly-available data on its own and presenting that data in graphic form, but instead by simply copying Plaintiff's work. In fact, in his deposition testimony, Truck Ads CEO effectively acknowledges that this is exactly what he has done. "If I saw a map that I thought was more accurate on the internet, I would–and more of a consensus that it was the market for the particular designated market area, then I would use–I would make an adjustment, a change. . . . But, again, all I'm doing is I'm just changing the color of the background of the county. I'm not doing anything else. There's no insignia, no indication there of anything except a county line and some color." (Subst. Ex. 2 [72] at 4.)

Defendant asks the court for a declaratory judgment on the copyrightability of DMA Data and

DMA Regions because it essentially sees these issues as inseparable from the copyright infringement of the DMA Maps.[2] But, as discussed above, copyright law provides protection for maps distinct from the facts in the world underlying them. As Justice Story explained,

> A man has a right to the copy-right of a map of a state or country, which he has surveyed or caused to be compiled from existing materials, at his own expense, or skill, or labor, or money. Another man may publish another map of the same state or country, by using the like means or materials, and the like skill, labor and expense. But then he has no right to publish a map taken substantially and designedly from the map of the other person, without any such exercise of skill, or labor, or expense. If he copies substantially from the map of the other, it is downright piracy; although it is plain that both maps must, the more accurate they are, approach nearer in design and execution to each other.

*Emerson v. Davies*, 8 F.Cas. 615, 619 (C.C. Mass. 1845). Though the "sweat of the brow" doctrine that Story alludes to in this description is no longer valid, copyright protection still extends to the features of a map other than facts. "Although a mapmaker is not protected from copying of the factual information conveyed in the map, she is protected from the copying of any originality in the manner of expression employed in communicating the factual information." *Sparaco v. Lawler, Matusky, Skelly, Engineers LLP*, 303 F.3d 460, 467 (2d Cir. 2002).

Essentially, Plaintiff and Defendant disagree about whether the DMA Maps themselves depict simple facts that are in the public domain and are represented without the requisite originality to warrant copyright protection, or whether the DMA Maps present an original compilation of public domain facts and proprietary market research in a form that warrants copyright protection. Defendant contends that because the information graphically represented in the DMA Maps is

---

[2] Defendant contended in an earlier brief that "DMA Regions, based on the DMA Data that underlie them, do not exist in any expressible form other than on DMA Maps." (Response Br. [48] at 10.) One of Nielsen's employees testified in a deposition that "DMA Regions and DMA Data make the DMA Map. So would we license the use of a paper map separate from having licensed to, or – the statistical representation, an Excel file? Yes." (Pl.'s 56.1, Ex. L at 119-20.) Though Plaintiff does not offer a detailed explanation of what statistical information might be contained within the Excel file, it is plausible, for example, that the DMA Region information could be represented in non-graphical form as a list of ZIP codes contained within each region.

public domain data, no copyright is possible.[3]  Plaintiff asserts that the DMA Maps are the product of the selection and arrangement of both public domain and proprietary data and therefore worthy of copyright protection.  Whether the DMA Regions and DMA Data are protectable is not an issue the court need reach, Plaintiff urges, because Plaintiff is satisfied that Defendant does not possess or use any of Nielsen's proprietary data other than by publication of the Maps.

In considering this motion, the court notes that prior to filing this lawsuit, Plaintiff did exchange several e-mails and letters suggesting that Defendant had violated Plaintiff's rights not only in the DMA Maps, but also in the DMA Regions and DMA Data. (Countercl. ¶¶ 11, 12, 13, 14.) Plaintiff's initial complaint and first amended complaint also included claims for infringement of DMA Regions and DMA Maps. (Countercl. ¶ 5, 6; Compl. [1] ¶ 18; Am. Compl. [17] ¶ 17.)  Plaintiff has not abandoned its position that the DMA Data and DMA Regions are themselves proprietary, though Plaintiff explains that discovery has demonstrated that Defendant has access to Nielsen's proprietary data only by way of the Maps.   (Reply Br. [76] at 2-3.)

Because there is no basis for the conclusion that Defendant actually possesses Plaintiff's DMA Maps or DMA Regions, there may well be no controversy that supports jurisdiction over the declaratory judgment counterclaim.  The court concludes, however, that the claim should be disposed of for another reason–it is "repetitious and unnecessary: it merely restates an issue already before this Court." *United States v. Zanfei*, 353 F.Supp.2d 962, 965 (N.D. Ill. 2005).  The court has discretion to, *sua sponte*, "strike from a pleading an insufficient defense or any redundant,

---

[3]     Defendant does not offer specifics to support this contention. The complaint outlining these allegations repeats the boilerplate assertion that the DMA Data, DMA Regions, and DMA Maps, "constitute ideas, procedures, processes, systems, methods of operations, concepts, principles, or discoveries that are not subject to U.S. copyright protection." (Countercl. ¶¶ 36, 37, 38, 39.) Defendant did, however, suggest in deposition testimony that this information comes from the Census Bureau. *See infra* at 4. In Defendant's 56.1(b)(3)(C) statement, it also suggests that "[a]dvertisers, advertising agencies, broadcasters, and others throughout the United States use designated market areas in their business, and maps of those market areas are available in a variety of published sources." (Def.'s 56.1(b)(3)(C) ¶ 2.) Defendant does not, however, explain why such uses or publications necessarily place the DMA Maps at issue into the public domain.

immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  In deciding whether to hear a declaratory judgment action, this court's discretion is broad, and should be based on "practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  While "the general rule [is] that motions to strike are disfavored . . . because motions to strike potentially serve only to delay[, . . . ] where, as here, motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller Financial, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir. 1989).

In order to sustain its claim of infringement, Plaintiff will be required to prove that the DMA Maps (or any other writing or data for which Plaintiff seeks protection) themselves consist of an original compilation, selection, and arrangement of facts.  Making such a case will necessarily require the court to review and consider the data underlying the maps, including the DMA Regions and DMA Data.  To allow Defendant to proceed on its declaratory judgment counterclaim implicating these same issues would be redundant, unnecessary, and would potentially complicate resolution of the copyright infringement claim at issue in this case.  Defendant's declaratory judgment counterclaim is stricken without prejudice.

## II. Plaintiff's Motion for Summary Judgment on Copyright Misuse Counterclaim

Defendant has also counterclaimed against Plaintiff for copyright misuse, alleging that "[n]otwithstanding Nielsen's actual or constructive knowledge that Nielsen has no copyright rights in Nielsen's DMA Maps, DMA Regions, or DMA Data, Nielsen has asserted [ ] claims in this action against Truck Ads for allegedly violating Nielsen's copyrights."  (Countercl. ¶ 41.)  Plaintiff has moved for summary judgment on Count Two of Defendant's counterclaim, arguing that copyright misuse does not constitute an independent claim for relief.  Even if the court were to recognize such a claim, Nielsen contends, Truck Ads' allegations do not "support a claim for copyright misuse because they do not establish an attempt by Nielsen to leverage its copyright to obtain rights beyond those conferred by its copyright registrations."  (Pl.'s Br. at 6-7.)  Finally, Nielsen contends

Truck Ads has no damages resulting from the purported misuse; Nielsen asserts that the deal Defendant alleges fell through did so before the manufacturer even became aware of the lawsuit. (*Id.*)

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In considering disputed facts, "we draw all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Williamson v. Indiana University*, 345 F.3d 459, 462 (7th Cir. 2003.) Aside from the damages element of this claim, the parties are largely in agreement on the facts, and the real dispute is whether a copyright misuse claim can proceed as a matter of law.

Copyright misuse is ordinarily presented as an affirmative defense to an action for copyright infringement where the copyright holder is misusing that right for a competitive advantage beyond the scope of the monopoly created by the copyright itself. "The doctrine of misuse prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly." *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 647 (7th Cir. 2003) (citation and quotation omitted) (collecting cases). The Seventh Circuit has also acknowledged, however, that copyright misuse might occur even when the misuse does not rise to the level of an antitrust violation–such as when the party alleged to have engaged in copyright misuse lacks the necessary market power to run afoul of the antitrust laws. In *WIREdata*, the Seventh Circuit considered defendant's claim that plaintiff was engaging in copyright misuse by attempting to block access to public tax assessment data contained within plaintiff's database, but rejected the claim because it found defendant had multiple routes of access to the public domain data without the need to infringe plaintiff's copyright in its database system. *Id.* at 647-48. In reaching that conclusion, however, the court did suggest that if plaintiff's claim of copyright infringement prevented defendant from obtaining the public domain data from plaintiff's database

9

system, that conduct might amount to copyright misuse. "[F]or a copyright owner to use an infringement suit to obtain property protection . . . that copyright law clearly does not confer, hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively, is an abuse of process." *Id.* Notably, while a number of courts have permitted parties to plead copyright misuse, there appears to be no case in which the Seventh Circuit found copyright misuse defeated a copyright infringement action. *See Reed-Union Corp. v. Turtle Wax, Inc.*, 77 F.3d 909, 913 (7th Cir. 1996) (noting, but not deciding, whether "[m]isuse of copyright in pursuit of an anticompetitive end may be a defense to a suit for infringement, along the lines of the patent-misuse doctrine in antitrust. . . .").

### A. Copyright Misuse is Not an Independent Claim

Defendant alleges copyright misuse not as a defense in this case, but instead as a claim for affirmative declaratory relief. The courts that have addressed whether there is such a cause of action are divided on the matter. Courts finding that copyright misuse may not be affirmatively asserted have generally done so on the ground that to plead an affirmative defense as an independent claim seeks an illegitimate litigation advantage. "[C]opyright misuse is not a claim but a defense, and Defendants may not transmute it into an independent claim merely by labeling it one for 'declaratory judgment.'" *Arista Records, Inc. v. Flea World, Inc.*, 356 F.Supp.2d 411, 428 (D.N.J. 2005). "Copyright misuse has already been asserted . . . as an affirmative defense, and the Court will reach all aspects of that issue if necessary. Separately litigating that defense in a declaratory posture would not serve the purposes of declaratory relief . . . [and] there are strong interests in judicial economy in avoiding needless duplication of these already elaborate proceedings." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 269 F.Supp.2d 1213, 1226 (C.D. Cal. 2003). *See also Broadcast Music, Inc. v. Hearst/ABC Viacom Entertainment Services*, 746 F.Supp. 320, 328 (S.D.N.Y. 1990) ("The Court rejects . . . defendant's assertion of the copyright misuse doctrine as a vehicle for affirmative relief. Such a claim is unprecedented and the Court declines to create the

10

claim."); *Maverick Recording Co. v. Chowdhury*, Nos. CV-07cv200(DGT), CV-07-640(DGT), 2008 WL 3884350 (E.D.N.Y. Aug. 19, 2008); *Interscope Records v. Kimmel*, No. 3:07-cv-0108, 2007 WL 1756383, at * 5 (N.D.N.Y. June 18, 2007).

Other courts have, however, recognized copyright misuse as a counterclaim; they note the analogous doctrine of patent misuse, and recognize that defendants may have reasons for seeking a declaration of their rights aside from the infringement claim they are defending. *See, e.g., Apple Inc. v. PsyStar Corp.*, No. C 08-3251 WHA, 2009 WL 303046, at * 2-3 (N.D. Cal. Feb. 6, 2009) ("PsyStar may well have a legitimate interest in establishing misuse independent of Apple's claim against it, for example, to clarify the risks it confronts by marketing the products at issue in this case or others it may wish to develop."); *Midwest Tape, LL v. Recorded Books, LLC*, No. 3:09 CV 2176, 2010 WL 1258101, at *1 (N.D. Ohio March 26, 2010) ("[B]ecause the Complaint seeks declaratory judgment, the plaintiff may assert copyright misuse as an affirmative claim."); *Electronic Data Systems Corp. v. Computer Associates Int'l, Inc.*, 802 F.Supp. 1463, 1465-66 (N.D. Tex. 1992) (declining to dismiss independent copyright misuse claim which alleged tying in violation of § 2 of the Sherman Act).

This court declines to decide whether the copyright misuse doctrine may be asserted as a counterclaim for declaratory relief. For the reasons described below, any such claim in this case fails on the merits.

### B. The Allegations Do Not State a Claim for Copyright Misuse

The *sine qua non* of a copyright misuse allegation is that the underlying infringement claim must be wholly lacking in merit. Defendant agrees this is the applicable standard. "[T]he Seventh Circuit recognizes that copyright misuse occurs where a copyright owner uses an infringement suit or threat of suit to obtain protection that copyright law *does not confer*." (Response Br. at 8 (emphasis added).) Defendant cites to *WIREdata*, where the Seventh Circuit explained that "for a copyright owner to use an infringement suit to obtain property protection . . . that copyright law

11

*clearly* does not confer . . . is an abuse of process." *WIREdata*, 350 F.3d at 647 (emphasis added). Such a claim might be pursued where Plaintiff is "transparently seeking to annex a portion of the intellectual public domain." *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004). *See also F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago*, No. 81-1333, 214 U.S.P.Q. 409, 413 n. 9, 1982 WL 19198, at *5 n. 9 (7th Cir. March 25, 1982) ("[I]t is copyright misuse to exact a fee for the use of a musical work which is already in the public domain."). Or, for example, "attempting to use [ ] copyrighted books to cover the unprotectible ideas within those books by filing copyright infringement lawsuits and forcing companies . . . to either settle or incur litigation expenses" constitutes copyright misuse. *Huthwaite, Inc. v. Randstad General Partner (U.S.), L..L.C.*, No. 06-C-1548, 2006 WL 3065470, at *9 (N.D. Ill. Oct. 24, 2006).

The mere fact that a copyright holder files suit for infringement cannot, of course, be the basis for a copyright misuse claim. *Huthwaite*, 2006 WL 3065470, at *9. Instead, a litigant asserting misuse must show that the copyright claim is meritless. *See Huthwaite, Inc. v. Ecolab, Inc.*, No. 05 C 3272, 2006 WL 929262, at * 2 (N.D. Ill. Jan. 4, 2006) ("Claiming infringement by a writing cannot possibly be copyright misuse unless the claim is patently frivolous."). Speaking in the context of an attorney's fees dispute, one court explained that plaintiff's behavior did not come close to copyright misuse because, "[w]here, as here, the case involves two parties with different, but reasonable, views of the law with an uncertain outcome there is little risk that one of them will use the high cost of litigation to thwart established copyright law and policies." *Traicoff v. Digital Media, Inc.*, No. 1:03-cv-1781-JDT-WTL, 2007 WL 2286133, at *3 (S.D. Ind. Aug. 7, 2007).

The heart of this dispute is Nielsen's allegation that the DMA Maps it produces are "original maps that graphically depict its proprietary DMA Regions, [ ] which are the product of a creative selection, arrangement and expression of variables and data sets." (Compl. ¶ 6.) Plaintiff alleges that "Defendant operates a website at www.truckads.com through which it copies, reproduces, and, by permitting their reproduction by website users, distributes copies of Nielsen's Copyrighted DMA

12

Maps," and also alleges that as part of its business model, "Defendant uses and reproduces Nielsen's Copyrighted DMA Maps to define these geographic regions and set prices for [its mobile advertising] licenses according to the rank of each DMA region." (*Id.* ¶¶ 10, 11.)

Defendant counters that the DMA Regions are not proprietary to Nielsen. (Answer ¶ 6.) According to Defendant, neither the DMA Regions or DMA Data presented in the maps, nor the DMA Maps themselves are subject to copyright protection. (Countercl. ¶¶ 41, 42, 43, 44, 45.) Thus, misuse has occurred because Plaintiff "knew or should have known" that "Nielsen's DMA Maps serve no independent purpose or function except to display the boundaries of the DMA Regions. . . . Nielsen's DMA Maps . . . merge with the underlying facts or ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries, that they express, and [ ] the DMA Maps are therefore not subject to U.S. copyright protection." (*Id.* ¶¶ 46, 48.) The merger doctrine "refers to the situation in which there is only one feasible way of expressing an idea, so that if the expression were copyrightable it would mean that the idea was copyrightable, and ideas are not copyrightable." *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 928 (7th Cir. 2003). A designated market area is not, however, a fixed idea capable of only one form of expression. Defendant itself cites to examples of different designated market areas–some versions of the DMAs include counties within them that others do not. (Def.'s 56.1(b)(3)(C), Ex. 19 at 5.) Defendant's own examples demonstrate that there is no fixed "idea" of a designated market area, but rather that different arrangements and interpretations of the underlying data can constitute different designated market areas. According to Plaintiff, its maps are the result of "creative selection, arrangement and expression of variables and data sets." (Compl. ¶ 6.) Plaintiff will have the burden of proof on this issue, but at this stage, the court is not prepared to say that its claim of copyright is abusive.

To the extent Defendant is arguing that the DMA Maps cannot be copyrighted because they are based on facts within the public domain, the law is to the contrary. The Seventh Circuit upheld

a decision favoring a mapmaker who alleged that another mapmaker had copied its maps, though the underlying data was indisputably in the public domain. "[W]hen the contribution lies in the arrangement of facts, only the arrangement is protected by the copyright. Rockford Map could not copyright the information in the deeds on file in the county courthouse, but it could and did copyright the arrangement of that information on a plat map." *Rockford Map*, 768 F.2d at 148. The court made clear that, "The input of time is irrelevant. . . . Perhaps the smaller the effort the smaller the contribution; if so, the copyright simply bestows fewer rights. Others can expend the same effort to the same end." *Id.* at 148.

*Feist*, decided after *Rockford Map*, did alter copyright law in this area, but the core holding of *Rockford Map* remains: a subsequent mapmaker is not free to copy the facts and arrangement of a map wholesale and pass it off as his own; the subsequent compiler may draw facts from the original compilation–with the caveat that the subsequent compiler must exercise at least minimal creativity in the selection or arrangement of those facts. *See Feist*, 499 U.S. at 348-49 ("[C]hoices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws. . . . Notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement.").

The courts do recognize an exception where, for example, the mapmaker displays basic factual information and "employs standard cartographic features without originality." *Sparaco*, 303 F.3d at 467. Defendant suggests this is the case here–that the DMAs are simple facts incapable of expression in any form other than that in which they have been expressed by Truck Ads and Nielsen. Defendant does not identify any evidentiary source for this suggestion, however, nor does has Defendant demonstrated that the inescapable similarities between its map and Nielsen's is the

function of having translated public-domain data into map form. And Defendant's own reference to different versions of these DMA maps belies any such claim. It may not be possible to portray a street of a definite slope in two different ways using standard cartographic features; but it is possible to portray a DMA with shifting, manmade, and artificial boundaries in myriad ways.

If Plaintiff did create its Maps using nothing but publicly-available census figures (which Plaintiff disputes), Defendant would be capable of creating the same exact map using the same figures, and could do so without copying Plaintiff's map wholesale. Thus, Plaintiff acknowledges, Defendant is free to review publicly-available data on its own and then create a map that is substantially similar to Plaintiff's, or perhaps to review factual material presented in Plaintiff's Maps and reproduce the data using another selection and arrangement. Plaintiff's allegation that Defendant acted unlawfully when it chose instead to simply copy Plaintiff's maps is not frivolous, unsupported by law, or clearly contradicted by the facts in the record, as it must be to constitute copyright misuse.

### C. Defendant Did Not Suffer Damages from the Alleged Misuse

This court initially dismissed the copyright misuse counterclaim because Truck Ads did not allege any injury aside from the lost business opportunities and related expenses stemming from the need to defend the lawsuit. (Hearing Tr. [60] at 3-4.) Defendant re-filed this copyright misuse claim alleging that the lawsuit filed by Nielsen interfered with negotiations between Defendant and a manufacturer for purchase of intellectual property. According to Truck Ads, "the commercial discussion between Truck Ads and the Manufacturer . . . were nearing fruition," but the manufacturer balked after learning of the pending lawsuit. (Countercl. ¶¶ 53, 55.) The factual record–as presented in the Local Rule 56.1 statements and supporting factual materials submitted by both parties–defeats these allegations.

Douglas Blackwell, who held the title of "product marketing manager" for the would-be purchaser, 3M, determined in September 2009, after preliminary talks with Defendant, that "it was

not worth continuing discussions" due mainly to the size of Defendant's business. (Pl.'s 56.1, Ex. G at 56, 67.) In an e-mail message sent in response to 3M's decision to discontinue talks, Truck Ads CEO Rod Harris asked whether the lawsuit was the reason for 3M's decision, to which Blackwell replied via e-mail that the "decision was primarily based upon the current size of your business and the available resources within 3M to make this work." (Def.'s 56.1, Ex. 12 at 2-3.) In fact, the uncontroverted evidence shows that Blackwell became aware of this lawsuit only after he told Harris that the manufacturer had no interest in continuing discussions. (Pl.'s 56.1, Ex. G at 66, 67.)

Defendant strings together portions of deposition testimony to suggest that the manufacturer took notice of the lawsuit and was swayed by it not to continue the relationship. (Def.'s Supp. 56.1(b)(3)(C) ¶¶ 33, 34.) Specifically, Defendant notes Blackwell suggested in his deposition that litigation would generally be relevant to his decision whether or not to pursue a business relationship, that he did investigate this litigation after becoming aware of it, and that 3M might be interested in further talks at some point "as long as [Truck Ads] weren't breaking the law." (*Id.* ¶ 34.) These bits and pieces of testimony, however, do not contradict the plain statements of those witnesses that the filing of the lawsuit did not influence 3M's decision not to continue discussions. Blackwell testified in a deposition that he made that decision prior to September 18, 2009, the date on which he sent an e-mail to another employee notifying him of his decision. (Pl.'s 56.1, Ex. G at 56; Def.'s 56.1, Ex. 12 at 2-3.)

> Q: At that point in time . . . were you aware of any claims between Nielsen and Truck Ads?
>
> A: Not that I recall, no.
>
> Q: Or any allegations that Nielsen had asserted against Truck Ads?
>
> A: No.
>
> Q: Or any lawsuit between Nielsen and Truck Ads?
>
> A: Not that I recall.

16

(Pl.'s 56.1, Ex. G at 56.) Another 3M employee, William Parfitt, a market researcher, also testified that the first he heard of litigation between Nielsen and Truck Ads was when Harris e-mailed Blackwell after 3M made the decision to terminate discussions. (Pl.'s 56.1, Ex. C at 87.) Truck Ads points to Blackwell's statement that 3M might be interested in resuming discussions in the future "as long as [Truck Ads] weren't breaking the law." Blackwell, however, explained in his deposition that "I don't recall stating those exact words. If I did say it, it most likely was in a humorous manner, not intending to send any message or be interpreted in any other way." (Def.'s 56.1 Resp., Ex. 11 at 122.) He further explained, without elaboration, that while he did not believe the opportunity worth pursuing, "Someone else . . . may see something I didn't." (*Id.*) These witnesses are not parties to this lawsuit, they have given their statements under oath, and neither party has challenged their credibility. While Defendant implies there is room for ambiguity, it provides no explanation as to why two disinterested witnesses would both claim they were not aware of the litigation if they actually were, or why it believes the litigation influenced 3M's decision not to continue discussions when the two individuals most closely involved in these discussions deny that is the case.

The unsupported allegation that 3M or another business entity might have shied away from doing business with Defendant as a result of this lawsuit is too speculative to support a claim for copyright misuse. Such an allegation could be made by virtually any defendant with respect to any lawsuit. Such an injury does not suffice to support an independent claim for relief.

Plaintiff has stated a facially valid claim for copyright infringement, and Defendant has suffered no remediable injury as a result of this lawsuit. Plaintiff's motion for summary judgment on the copyright misuse counterclaim is therefore granted.

## CONCLUSION

Plaintiff's motion for summary judgment [83] and Plaintiff's motion to dismiss [67] are granted.

17

ENTER:

Dated: January 24, 2011

_____
REBECCA R. PALLMEYER
United States District Judge